DA 11-0593

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 181

FAITH MALPELI,

       Plaintiff and Appellant,

  v.

STATE OF MONTANA,

       Defendant, Appellee, and Cross-Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 10-105B
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Wade J. Dahood, Bernard J. Everett; Knight, Dahood, Everett & Sievers;
Anaconda, Montana

       For Appellee:

              David Lee Ohler, Jolyn E. Eggart; Special Assistant Attorneys General,
Montana Department of Transportation; Helena, Montana

                    Submitted on Briefs:  June 6, 2012

                             Decided:  August 21, 2012

Filed:

_____
                        Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Faith Malpeli brought an inverse condemnation action against the Montana Department of Transportation (MDT), seeking compensation for the alleged taking of her property as a result of the reconstruction of Montana Highway 191 near Big Sky, Montana during a highway safety improvement project.  A jury found that MDT had not taken a property right belonging to Malpeli, and therefore did not reach the question of compensation.  Malpeli appeals, arguing that the District Court erred by (a) denying Malpeli's motions for judgment as a matter of law or a new trial; (b) excluding Malpeli's appraiser from testifying; and (c) allowing MDT to disclose to the jury an offer of compromise it had made to Malpeli before this action was filed.  MDT cross-appeals, arguing that the District Court erred by denying its motion for partial summary judgment before trial.  After careful consideration, we determine that the motion for summary judgment should have been granted, and therefore affirm the judgment in favor of MDT.

¶2     The issue that we address on appeal is the following:

¶3     *Did the District Court err in denying MDT's motion for summary judgment regarding Malpeli's claim that MDT took from her the right of reasonable access to her property?*

¶4     Because we conclude that the District Court erred in denying summary judgment on this issue, we do not address Malpeli's claims of trial error.

2

**PROCEDURAL AND FACTUAL BACKGROUND**

¶5 Malpeli owns residential property adjacent to Montana Highway 191. MDT is the state agency responsible for operating and maintaining public highway facilities, including rights-of-way, embankments, drainage structures, bridges, guardrails, and other protective structures, to ensure the safe, efficient use of the highways. *See* §§ 2-15-2501 to -2511, MCA; §§ 60-1-101 to -103, MCA; §§ 60-2-201 to -243, MCA.

¶6 In the summer and fall of 2008 and 2009, MDT reconstructed the portion of Highway 191 adjacent to Malpeli's residence as part of a highway safety improvement project. The MDT reconstruction of Highway 191 involved widening the highway to include a left-turn lane and adding eight-foot-wide paved shoulders. All of these improvements were completed within the existing highway right-of-way. None of Malpeli's property was required in order to widen the highway and add the paved shoulder.

¶7 Malpeli's property includes a driveway from Highway 191 to her garage. Part of Malpeli's garage is located just one foot from the highway right-of-way. After the project was completed, the highway fog line and the edge of the pavement were as much as eight feet (the fog line) to nearly eighteen feet (the edge of the pavement) closer to part of Malpeli's garage than they had been before the project. In addition, Malpeli's approach from the highway to her property had been paved, the grade had been reduced, and a guardrail had been added on the south side of the approach.

3

¶8 On January 29, 2010, Malpeli filed this lawsuit, alleging that MDT, in carrying out the reconstruction project, had, among other claims, (a) "taken from plaintiff MALPELI reasonable and safe access to her residential property to and from Highway 191;" and (b) "violated its own MDT 'approach standards' in the reconstruction of the highway."[1] The crux of Malpeli's complaint about access to her property was described in later pleadings: "Before the widening of Highway 191, FAITH MALPELI could maneuver her vehicles to turn them around and face the approach to Highway 191. Since the widening, she cannot. She, her guests and delivery vehicles now must back out onto the highway or back out onto the paved shoulder . . . ."

¶9 Following discovery, MDT filed a motion for summary judgment, arguing that Malpeli did not have a property interest in use of the public right-of-way for maneuvering vehicles, and that using the public right-of-way in such a manner was unrelated to any right of access that a landowner might possess. Malpeli opposed the motion.

¶10 The District Court denied MDT's motion for summary judgment, concluding that Malpeli has a property interest in "reasonable ingress and egress" to and from her property, and that the question whether the reconstruction of Highway 191 constitutes a taking of this property interest is a question of fact.

**STANDARD OF REVIEW**

¶11 We review *de novo* a district court's decision on a motion for summary judgment, using the same criteria applied by the district court under M. R. Civ. P. 56. *Boehm v.*

---

[1] Malpeli raised several other claims, but they are not at issue in this appeal.

4

*Cokedale, LLC*, 2011 MT 224, ¶ 12, 362 Mont. 65, 261 P.3d 994. Rule 56(c)(3) provides: "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A material fact is one that involves the elements of the cause of action or defense at issue to such an extent that it requires resolution of the issue by a trier of fact. *Williams v. Plum Creek Timber Co.*, 2011 MT 271, ¶ 14, 362 Mont. 368, 264 P.3d 1090.

¶12 In order to defeat a motion for summary judgment properly made and supported, the opposing party must set out specific facts showing a genuine issue for trial by affidavits or as otherwise provided by Rule 56. M. R. Civ. P. 56(e)(2). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party; all reasonable inferences must be drawn in favor of the party opposing summary judgment. *Williams*, ¶ 15.

## DISCUSSION

¶13 *Did the District Court err in denying MDT's motion for summary judgment regarding Malpeli's claim that MDT took from her the right of reasonable access to her property?*

¶14 Malpeli's inverse condemnation claim is based on Article II, Section 29 of the Montana Constitution, which states that "[p]rivate property shall not be taken or damaged for public use without just compensation to the full extent of the loss having been first made to or paid into court for the owner." A claim under this provision requires a court to first determine "whether a plaintiff possesses a cognizable property interest in the

5

subject of the alleged taking. The question of whether plaintiffs owned a compensable property interest presents a question of law based on factual underpinnings." *Kafka v. Mont. Dep't of Fish, Wildlife & Parks*, 2008 MT 460, ¶ 32, 348 Mont. 80, 201 P.3d 8 (quoting *Mohlen v. United States*, 74 Fed. Cl. 656, 660 (Fed. Cl. 2006)). Under Montana law, the threshold question whether one has a protected property interest must be answered in the affirmative before the question whether one was deprived of that interest may be submitted to the trier of fact. *Kafka*, ¶ 32 (quoting *Seven Up Pete Venture v. State*, 2005 MT 146, ¶ 26, 327 Mont. 306, 114 P.3d 1009).

¶15 Property interests are defined by rules or understandings that stem from an independent source such as state law. *Kafka*, ¶ 33 (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001, 104 S. Ct. 2862, 2872 (1984)). The determination whether a citizen has a protected property interest focuses on the citizen's relationship to the alleged property, such as whether the citizen had the rights to exclude, use, transfer, or dispose of the property. *Kafka*, ¶ 33 (quoting *Members of the Peanut Quota Holders Assn. Inc. v. United States*, 421 F.3d 1323, 1330 (Fed. Cir. 2005)).

¶16 The undisputed facts of this case show that Malpeli could still enter and exit her property after the Highway 191 project was completed, but that it was more difficult for her to turn a vehicle around, because MDT had used much of the highway right-of-way where she previously had turned around to widen the highway and add shoulders. At Malpeli's deposition, which was among the discovery materials filed in connection with the summary judgment motion, she explained that her "right of access" claim involved

6

only the "danger" of "pulling in and out" of her driveway, specifically her concern that she could only back onto the highway or paved shoulder. The real question presented by the motion for summary judgment, therefore, was whether Malpeli had a compensable property interest in the use of the public's right-of-way to turn her vehicles around.

¶17    In denying MDT's motion for summary judgment, the District Court relied on this Court's holding in *State by State Highway Comm'n v. Keneally*, 142 Mont. 256, 384 P.2d 770 (1963). The parties in *Keneally* recognized that an abutting landowner has a right to "*reasonable* ingress and egress from the abutting highway." *Keneally*, 142 Mont. at 265, 384 P.2d at 775 (emphasis in original); *see Wynia v. City of Great Falls*, 183 Mont. 458, 472, 600 P.2d 802, 810 (1979) (quoting *Bacich v. Board of Control*, 144 P.2d 818, 834 (Cal. 1943) (Traynor, J., dissenting)) ("the right of ingress and egress is limited to adequate and reasonable access to the property from the street").

¶18    The *Keneally* Court stated: "'No hard and fast rule can be stated as to whether an abutting property owner has been denied access that is reasonable . . . . *In most instances the question is one of fact, not of law, and its determination depends largely upon the evidence in the particular case.*'" *Keneally*, 142 Mont. at 265, 384 P.2d at 775 (emphasis added) (quoting *Iowa State Highway Comm'n v. Smith*, 82 N.W.2d 755, 760 (Iowa 1957)). This statement was made in a far different context from that presented by Malpeli's case, however, and for the reasons that follow we conclude it is not applicable here.

7

¶19 *Keneally* was a condemnation action in which the State had taken a portion of the private property on which a service station was located in order to build a new, wider highway. 142 Mont. at 258-59, 384 P.2d at 771-72. There was no question, therefore, that the State had taken a compensable property interest, and the only issue at trial was the amount of compensation to be awarded the service station owner. 142 Mont. at 259-60, 384 P.2d at 772. The facts were that prior to the highway project, patrons could enter the property at any point along the 300-foot frontage, but after the project, entry was limited to one specially constructed approach along the highway, and a new median divider prevented direct left-hand turns into the service station from the highway. 142 Mont. at 259, 384 P.2d at 772. The facts of *Keneally* did not involve use of the highway right-of-way to turn vehicles around.

¶20 The State challenged the District Court's jury instructions on the right of access, arguing that the jury was permitted to consider matters that were not compensable. 142 Mont. at 264, 384 P.2d at 774-75. Despite the *Keneally* Court's reference to "no hard and fast rule" about the denial of reasonable access, the Court reversed for a new trial, ruling that the jury should have been instructed that "no compensation may be awarded . . . merely because traffic may be diverted as the result of construction of median dividers on the highway," and that "the right of access does not embrace all points on the common boundary on the entire length of the highway." *Keneally*, 142 Mont. at 266-68, 384 P.2d at 775-76. Even the *Keneally* Court, therefore, recognized that not every change in access of an abutting landowner implicates a compensable property interest.

8

¶21 We look to rules or understandings stemming from state law to determine the extent of Malpeli's property interests as an abutting landowner. *Kafka*, ¶ 33. MDT has adopted regulations that govern access to highways. Admin. R. M. 18.5.101 to 18.5.113. The regulations, also referred to as "Approach Standards," "are intended to provide for reasonable and safe access to highways, while preserving the safety and utility of the highways to the maximum extent possible." Admin. R. M. 18.5.101(1), (2). They recognize that "[f]rontage property owners have certain rights of access to the highway consistent with their needs, and the highway user has a right of safety, and freedom of movement." Admin. R. M. 18.5.102(2). The purpose of the regulations is "to establish driveway approach standards which will tend to reconcile and satisfy the needs and rights of both the property owner and the highway user." Admin. R. M. 18.5.102(2). An "approach" within the meaning of these regulations is "that section of the highway right-of-way between the outside edge of shoulder and the right-of-way line which is designed as a highway for the movement of vehicles between the highway and the abutting property." Admin. R. M. 18.5.103(1).

¶22 The regulations provide instructions for an abutting landowner to obtain a permit to construct or reconstruct an approach to a public highway (Admin R. M. 18.5.104) and provide requirements for the construction of an approach (Admin. R. M. 18.5.105 and 18.5.112). Although MDT will not design layouts for driveways on private property, it does provide "typical drawings illustrating the design requirements" upon request.

9

Admin. R. M. 18.5.113.  Malpeli never applied for an approach permit, and the MDT had never issued one for her property before she purchased it.

¶23     Among the design requirements are the following:  "*Sufficient storage area off the highway right-of-way shall be provided by the landowner* to prevent the servicing, stopping and storing of vehicles on the approach and *to prevent a vehicle from backing out of an approach onto the traveled way*."  Admin. R. M. 18.5.112(9)(b)  (emphasis added).  "The setback distance *from the right-of-way line* to the nearest edge of gas pump islands, vendor stands, tanks, water hydrants and other improvements should be at least 15 feet.  A greater distance is recommended in rural areas where free movement of large vehicles is anticipated."  Admin. R. M. 18.5.112(9)(a)  (emphasis added).  These provisions make it clear that although MDT may not deny a landowner access between the highway and landowner's property, it is up to the landowner to provide enough room on his or her property to maneuver vehicles.  Malpeli could not look to MDT to provide her with enough room on the highway right-of-way to turn her vehicle around; it was her responsibility to provide that room off the highway right-of-way.[2]

¶24     As noted above, determining whether a "property interest" exists for Takings Clause purposes requires analysis of "'the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it.'"  *Kafka*, ¶ 168 (Nelson, J., dissenting) (quoting *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 82

---

[2] We note that an engineer, named as an expert witness by Malpeli, said in a deposition submitted with the motion for summary judgment that one possible solution to the safety concerns raised by Malpeli would be "relocating [Malpeli's] garage."

10

n. 6, 100 S. Ct. 2035, 2041 n. 6 (1980)). This Court and others have held, based on the facts presented, that government-issued permits or licenses to use property in a certain manner are not compensable property interests. *See e.g. Kafka*, ¶ 41 (noting that "[c]ourts . . . have taken a dim view of the notion that government-issued licenses are compensable property interests," and citing cases involving grazing permits, fishing licenses, and licenses to operate lottery machines); *Kafka*, ¶ 54 (alternative game farm licenses are not compensable property interests). Malpeli's case for a compensable property interest is even weaker than that of a licensee or permit-holder, as she did not have government license to use the highway right-of-way as she did; she did not even have an approach permit for her driveway. Although she had—and still does have—a right to access her property across the right-of-way, Malpeli had no ownership interest in the right-of-way, no right to exclusive use of the right-of-way, no ability to exclude others from the right-of-way, and no right to transfer or dispose of any interest in the right-of-way.

¶25 The uncontested facts presented to the District Court in connection with the motion for summary judgment were that part of Malpeli's garage was located just one foot from the right-of-way, and that the area that Malpeli previously had used for maneuvering her vehicles was located on the right-of-way. As a matter of law, she cannot claim that MDT denied her access to her property, because she had no property interest in the use of the public right-of-way to turn her vehicles around.

11

¶26 Malpeli emphasizes in her brief that she is entitled not just to access, but to "safe and reasonable access." She claims that she is entitled to compensation because the widening of the highway rendered her access "unsafe and inconvenient, in that she must now back out on the highway." Malpeli has cited no authority for her argument. A similar claim was rejected in the case of *In re Condemnation by the DOT*, 827 A.2d 544 (Pa. Commw. 2003). There, the Pennsylvania Commonwealth Court denied the claim of an abutting landowner who sought compensation on the grounds that a road expansion entirely within the public right-of-way had eliminated a gravel shoulder that he previously had used to back trailers into his garage and look around his building to check for oncoming traffic. Distinguishing a case in which a family's access to their residence had been *physically* restricted when the Pennsylvania Department of Transportation dumped stone onto their driveway, the court held:

> That Landowner previously made special use of the shoulder in the public right-of-way to overcome dimensional and sight distance limitations on his property does not raise an enforceable expectation that this bare license will continue. . . . Simply put, Landowner did not prove a basis to be compensated for loss of special use of PennDOT property.

827 A.2d at 548 (citation omitted).

¶27 In Malpeli's case, she previously had made special use of the unpaved shoulder in the public right-of-way to overcome the problems caused by the location of her garage and her failure to provide "[s]ufficient storage area *off the highway right-of-way* . . . to prevent a vehicle from backing out of an approach onto the traveled way." Admin. R. M. 18.5.112(9)(b) (emphasis added). This use of the highway right-of-way did not establish

a compensable property interest. Because the undisputed facts established that Malpeli did not have a compensable property interest as a matter of law, summary judgment should have been granted in favor of MDT.

¶28 For the same reasons, we determine that the District Court correctly denied Malpeli's motions for judgment as a matter of law or for a new trial under M. R. Civ. P. 50 and 59. We have considered Malpeli's arguments concerning MDT's Approach Standards and Montana's traffic laws, but do not find them persuasive. MDT witnesses acknowledged at trial that MDT had the duty to provide reasonable access to Malpeli's property, and that the way in which Malpeli used the approach to her property was "less than ideal" from a safety perspective. Nevertheless, the undisputed facts established that any safety problems were not the result of the taking of a compensable property interest, but rather the result of limitations on Malpeli's property. Malpeli was not entitled to judgment as a matter of law or a new trial.

## CONCLUSION

¶29 Because MDT was entitled to summary judgment as a matter of law, we will not address Malpeli's claims of trial error in the admission of evidence.

¶30 The judgment in favor of MDT is affirmed.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS